We'll hear argument first this morning in Case 11-1221, Hillman v. Maretta. Mr. Rutenberg. Mr. Chief Justice, and may it please the Court. Congress intentionally designed FEGLIA so that the Federal interest ends once the insurance proceeds are paid out. FEGLIA was established to enable Federal employees to carry out their responsibilities to their families, and Congress knew that some of its employees would get divorced, and it was depending upon State laws to help make sure that these family duties and obligations were carried out, because Congress doesn't want to get into the business of regulating divorce. Why did it make an exception, then, only for divorce decrees? Justice — I mean, there is an express exception in the statute that the beneficiary can be changed by a decree of divorce. Yes. Why would Congress say that while at the same time believing that the beneficiary can effectively be changed without a decree of divorce? Justice Scalia, because Congress knew that one of the main purposes behind FEGLIA was to help the insured or enable the insured to carry out responsibilities to their families, and that is a mechanism to help do that, but it wasn't. It's written, but it's written in such precise terms. It must be incorporated in a divorce decree, and the decree must be filed with the employing agency pre-death. What you're saying is this specific exception, Hightley Cabin, is generalized so that in all cases the second wife will prevail over the first. Justice Ginsburg, I believe that the requirements that it get filed in — it be in a divorce decree and it get filed before death are an example of Congress intending to preempt the field of interference with the FEGLIA plan. It — Congress did this in several occasions. If you want to do a beneficiary designation, you have to do it before — in order for it to be honored, it's got to be filed before death. The same thing with an assignment. An irrevocable assignment has to be done before death. These are all examples of Congress saying we don't want States interfering with the administration of FEGLIA plans, but I don't think it is a statement that Congress is saying we don't want States to regulate domestic relations when it comes to FEGLIA benefits. The intent of Congress with regard to FEGLIA benefits needs to be gained from a review of the entire statute of FEGLIA. Ginsburg. Why should it be different than the outcome in Wisner and Ridgway? And one case that you cite quite often is the Hisquierdo case for — you cite it for the outcome in that case. The outcome in that case was the preemption prevailed in that case. I was citing the case of Hisquierdo because I think it very well lays out the presumption against preemption of family law, and while that presumption can be overcome, as it was in Ridgway and as it was in Hisquierdo, it still is there. And it's a statement that Congress generally is not looking to regulate divorce. Not that Congress can't do it when it wants to, but that this Court normally starts its analysis assuming that Congress didn't intend to do that, unless they find direct — a direct enactment saying this is — we want to preempt all other State laws. That was the purpose behind citing Hisquierdo. But to answer your first question. The exception suggests another thing, besides the fact that it suggests that the only way the second spouse prevails is by a divorce decree. It also suggests that Congress's sole purpose, that Congress did not have the sole purpose in this statute to make it easy for the insurance company that has to pay out the proceeds to know whom the — who the beneficiary will be. If that were the case, there wouldn't be this exception for a divorce decree, because the insurance company is going to have to look to see if there's a divorce decree on the books, blah, blah, blah, blah, blah. That obviously shows that Congress, in this statute, not only had a concern about efficiency of payment, but also had a concern about who gets the payment, right? There's no other way to explain the exception for divorce decrees. Well, the exception for divorce decrees, I would analogize to the Rose case, when this case was — when this Court was addressing veterans' benefits. And in the Rose case, this Court distinguished Ridgway and Wisner because the purpose behind the veterans' benefits statute, this Court determined, was in part to take care of the veterans' families. And it looked at — it looked at the text. It looked at the Senate report that said that, but it also looked at the text. And the text had, in Rose, a provision which said the Veterans Administration can apportion a part of those benefits for the benefit of the noncustodial children. And it was argued in that case that that's Congress's statement, that this is the only exception, and further exceptions shouldn't be applied, and Congress was trying to regulate this area. But this Court said that's not what Congress was doing there. That was Congress showing that they cared about — that those benefits were there to help take care of the family members. And Fegley is the same way. What was the issue?  In Rose, there was veterans' benefits. And those — he was being sued in State court for enforcement of child support. And those were his only assets. Ginsburg. Now, they were taking them from him to support his family. Correct. This is quite something different. This is taking it from the designated beneficiary and giving it to somebody who isn't designated. That's correct, Your Honor. But I think when you look at the purpose, the stated purpose of Fegleya, which is to help insureds carry out their responsibilities to their families, and you think that's the purpose of this exception for divorce decrees. I think that in your experience, a man usually has more children or children in his second marriage than he did in his first. No, Your Honor. I don't think so either. I think if Congress was concerned about money for the kids, it would have left the money with the first wife. Well, I think what Congress was doing is Congress was making a statement. I don't think they were trying to say — they were looking at this divorce law in particular. I think what Congress was saying is that we're just going to look to the States and let the States use their benefit and wisdom to determine which divorce law should apply and which shouldn't apply. So that in this case in particular, there are benefits and detriments possibly to Section D. But what this Court, I think, would be appropriate to do is to pass a bright-line rule that said State laws that interfere with the administration of a plan are preempted. But after that, after the money has been paid out, laws that affect the benefits are not preempted. And that allows the States to use their wisdom. Kennedy, it's not just preempted, but the whole purpose of the preemption can be thwarted. Justice Kennedy, it's not the purpose of the preemption. Section D was a response to this Court's opinion in Egglehoff. And at first blush, it looks like, especially with the language, that that's what the States are trying to do, trying to end-run preemption. But that, when you look at it closely, that's not what was going on. In Egglehoff, this Court found that Congress intended to preempt a Washington statute very similar to Section A. But what Congress was preempting was a State interfering with the administration of the plan. It wasn't preempting a State domestic relations equitable remedy designed to protect the people to whom the Federal employee owed a duty of support. It wasn't that the States were not listening to Congress or this Court, and they're not sticking their fingers in their ears going, la, la, la, I can't hear you. A good example of this would be if a State had a estimated tax payment law that said when you get insurance, you've got to pay 10 percent into the court or into the State. That wouldn't be preempted. But if the State thereafter had a law, enacted a law that said, we want a withholding requirement, and if that money is withheld, then you don't have to do the estimated tax payment, well, that would clearly be preempted because it interferes with the administration of the plan, but the first law would still be fine. It shouldn't, per se, be preempted because it enacted the second law that is preempted because it's interfering with the administration of the plan. Scalia, the divorce exception blows away that explanation, that all Congress is concerned about is efficient administration of the plan. So long as the insurer will know, you know, just look at the contract, the named beneficiary, pay the money to the named beneficiary, and you're home free. That is blown away by the exception for divorce decrees. The insurer is going to have to check that there hasn't been a divorce since the contract was signed, right? Well, they're not going to have to check unless it's been properly filed. But they have to check to see if it has been properly filed, right? Yes. Yes. But the Federal Government has no – there's no interest that the Federal Government would have in saying that a divorce decree that was properly filed should be honored but one that hasn't been properly filed shouldn't be. They want State laws there. But what about the other? Quite apart from that, it seems to me that under your proposal, the Congress would actually have accepted a situation where one spouse sues a former spouse. In other words, you haven't – that's the whole design of this statute. Would the insurance company, if you were representing the insurance company, would you tell the insurance company that they were completely safe in paying the benefits to the first spouse, even if there was going to be a suit afterwards? Absolutely, Your Honor. Would the insurance company itself be under some liability? Justice Kennedy, that's the whole point, is that the insurance company isn't – That's the design of the statute. That's the design. But I'm just wondering whether under State law, the insurance company, if it knows this doesn't have some duty to refrain from making the payment or to put it in escrow or to interplead. Not at all. The statute's specifically written so that the former spouse becomes personally liable to the widow or whoever was entitled to it. It's designed to make the – If you're representing the insurance company, you wouldn't say you better interplead to be on the safe side? I think this Court can establish that – I think they have established under the Kennedy case that they have a duty to pay the designated beneficiary. In Kennedy, with regards to ERISA and whether – it was very clear that the insurance – the plan administrator has to pay. So I think that there's no concern at all for the insurance company. Mr. Rutenberg, how do you get to this notion that administrative convenience is all that is involved? After all, this is an employee's life insurance, and the government is saying to the employee, the beneficiary is your free choice. You can pick anyone, a spouse, a charity. It's your choice. But we want you to know that although you make it and you can change it any time you want, if you don't change it, that will be it. So it's giving the employee control over the proceeds of his or her life insurance. Why isn't that a purpose, along with administrative convenience? I believe that the purpose of FEGLIA was – the other main stated purpose is that the beneficiary offer life insurance similar to what was being offered by private companies, and they're acting as an employer in this regard. And just like with private group life insurance, most people think that the beneficiary designations are going to control where that money goes, and the same with FEGLIA. But also, most everyone expects when they get divorced that their assets are going to be subject to State divorce law. And I'm not suggesting that Congress wasn't concerned with employees carrying out their responsibilities to their families. I'm suggesting Congress is using the State law. Congress doesn't want to be the one that makes sure that those responsibilities are carried out. They're relying on State law, and they've developed a scheme that allows State law to help make sure those duties are carried out. Alito, if an insured, after making a designation of a beneficiary, writes a will and leaves the insurance proceeds to a different person, the Federal law would still, as interpreted by the State supreme court, require the money to be paid to the designated beneficiary, wouldn't it? Yes, Your Honor. And what does that say about Congress's supposed desire to ensure that the money goes to the person that the insured wants it to go to? Well, Justice Alito, after the money has been paid out in a case like that, it is possible that there are State laws involved that would allow someone to have a suit and institute a suit against the one who received that. But Congress doesn't want OPM or MetLife to have anything to do with that. They just want OPM and MetLife to be able to do the job of paying out the designation. Well, the point is, if Congress's objective, if one of its objectives, in addition to administrative convenience, was to effectuate the will of the insured, then I don't see why it would provide for Federal law to override a subsequent will which directly expresses the desire of the insured. I don't think FEGLIA says that. What it says is you would agree with that. I assume you would agree with what Justice Alito just said. Yeah. That has only to do with administrative convenience. Well, I don't want to say that it has only to do with that. That's one of the, that's the reason, though, that everything ends once the benefits are paid out. Why should this scheme be treated differently than the National Service Life Insurance and the successor law in Wisner and Ridgeway? Those operated the same way. They said the person you designate is who gets it, and if you, the only way you could change it is to have a change of beneficiary form filed with your employer. If you don't do that, whatever you said is where the money goes. There's, you have to compare the FEGLIA and the CIGLIA to get the intent of Congress. You want to, this Court should look at the text of FEGLIA and it should look at the legislative history, and there's five main differences I can point to which suggest that Congress intended something different. The first is that FEGLIA doesn't have an anti-attachment provision. But the two decisions that dealt with the anti-attachment, they gave that as an alternative ground of decision. It was quite separate and discreet from saying what's on the beneficiary, the designation that controls. And they say, and also there's this anti-attachment. Absolutely, Your Honor, but when it did the holding regarding the order of precedence, it didn't just look at the order of precedence. It looked at all of CIGLIA and it looked at the differing provisions. And one of the provisions, I think, that indicates Congress's intent in CIGLIA is the anti-attachment provision. So if the second holding was not there at all with regard strictly to the anti-attachment provision, Ridgeway still would have held the way it held because it was looking at all of CIGLIA. But that's not the only difference. There's also the divorce provision, which they have in Federal group life insurance, and they didn't put that into servicemen's group life. They let FEGLIA people assign their benefits. There's a limited express preemption provision in FEGLIA, which they didn't feel was needed in CIGLIA. And when you put it in your briefs in this case, you put in the assignment provision as an afterthought. I think you did not put it in your main brief. It came up only in your reply brief, and you didn't put it in the appendix to your main brief? That's correct, Your Honor. So you seem to assign less importance to it. I do assign less importance to the assignment provision than I would to the lack of an anti-attachment provision or the divorce provision or the express preemption provision or even the legislative history. But I do still think that it is a factor to be looked at. And in this case, again pointing to the Rose case, in the Rose case they were dealing with the same anti-attachment provision in Rose, and even there determined that Congress did not intend that those dollars should be kept away from the family members in that case. So I would again analogize that to this case, because in the Rose case they specifically distinguished those two cases on this balance. Scalia, I keep coming back to the explicit divorce provision, which says when there is a divorce decree only properly filed, it, without a change by the beneficiary, goes to the new wife, okay? And you're telling us that even without a divorce decree, the new wife will effectively get the money, so long as there is a State law that says all proceeds from insurance companies for policies entered into before the decedent was divorced will go to the new wife. It seems to me that is such a blatant frustration of the — not just the purpose of the very text of the divorce provision in the law, which says only if there is a decree properly filed will it go to the new wife. And you're saying, well, it doesn't really matter, so long as there is a State law which says it will go to the new wife without a, you know. There are two points I'd like to make there. One, I don't think Congress was trying to get involved in the field of divorce. I don't think Congress with that law was saying all other domestic relations laws don't apply. We only want to apply these laws. There are so many other domestic relations laws like community property rights and waivers, and children even in these divorce decrees can't file it, and then children would lose out if their parents didn't know enough to file those things. So the first point is that I don't think that that's what Congress was trying to do there with that provision. And the second point is that it's not a superfluous provision. If I had a divorce decree, I would much rather file it with the court so that I knew it would get paid directly to me than have to deal with it after it's been paid out. So I think it is — it absolutely serves a purpose, but it doesn't serve the purpose of trying to get — I think Congress was trying to make a statement, we want these benefits to be subject to State laws, not that we want these benefits to be— Sotomayor, if that was Congress's intent, why limit it to a specific form of State orders involving divorce, annulment, et cetera? Why not just simply say in 807.05e that any court order could change the order of precedence, if that was Congress's intent? I believe that's basically what they did, because the other type of court orders, such as a waiver, wouldn't make sense to put in there. You would not — if I was paying attention, if I had filed — if I had a divorce decree, said my ex-wife waived a right to my insurance, it doesn't make sense that I'd do that additional filing, because that wouldn't add anything to it. So Congress was saying that court orders can — that direct where money goes does that, and the other types of laws, like community property laws or waivers or this type of law, they would have to have a separate section for each of them to draft it in such a way that it wouldn't interfere — it would make it easy on OPM to know where to pay the money. And I think what they were doing is they weren't saying any types of State laws can come in, because they didn't — they wanted to deal with the ones that were clear, that were easy for them to deal with, so that they — so that OPM and MetLife knows where to pay the money. Ginsburg. Mr. Rutenberg, what about the interest, which was an interest in Wisner and in Ridgway, of uniformity under this Federal insurance scheme? That is, one of the hypotheticals in the briefs was the deceased dies domiciled in Virginia. Wife number one comes from X State, not Virginia. Wife number two from Y State, and they all have different rules. The employee, in the course of her career, may move around from here to there. But if you follow the Federal law, then it's going to be the same for every employee. This is the rule for every employee, no matter where he or she lives, no matter the location of the spouse. And then we don't have these messy problems with choice of law. Congress was definitely concerned with — and as, again, I keep referring to the Rose case because I think it worded it well — it was confirmed with the uniformity of the administration of the policy, and they wanted OPM and MetLife to uniformly, no matter where anyone lived, be able to pay those out. But just like a private employee, people expect their assets to be subject to divorce laws after they're paid out, and OPM is not involved in anything messy. MetLife is not involved in anything messy after it's paid out. They're treating them just like any other employee in a private company. And Congress stated that the purpose, the other — there are two main purposes. The other main purpose of FEGLIA was to create an insurance plan that was on par with, not the special kind of insurance that we're offering to servicemen. Congress, with Servicemen's Group Life, took out a magic wand and said, we're going to make these insurance proceeds special, and gave special characteristics to the Servicemen's Group Life insurance proceeds. But they did not do that. And, well, the reason they did that with Servicemen's Group Life insurance is because they wanted servicemen, no matter how much they messed up their finances, to know that they could leave some asset to whoever they wanted to. Scalia. Why didn't they just say, look, if the State law says so, the new wife gets it? Why didn't they just say that instead of — you're telling me they set up this sick system in which the former wife or the new wife has to sue the former wife to get the money that was paid to the former wife. I mean, my goodness. Are courts crowded with suits between, you know — why didn't they just say, if the State law says it, it goes to the new wife? The first reason is because I don't think they wanted to try and come up with every permutation of divorce law. The second reason, you characterize this as a sick law, but 48 States incorporate laws which have this concept. They say in your will, references to your former spouse are deemed divorced. They just haven't, because the nature of asset transfers and probate has developed over time. Not all the States have caught up. Only 18 have. But if I may reserve the rest of my time for rebuttal. Roberts. Thank you, counsel. Mr. Johnson. Thank you, Mr. Chief Justice, and may it please the Court. On two separate occasions, this Court has held that order of precedence provisions like those found in Feglia grant the insured an absolute personal right to, quote, direct that the proceeds belong to the named beneficiary and no other. In fact, Congress enacted Feglia just four years after this Court's decision in Wisner, where this Court held that the NISLA order of precedence was the controlling section of the Act, was forceful and clear in defining the scope of this Federal personal right, preempted post-distribution efforts to nullify the insured's choice, quote, whether directed at the very money received from the government or an equivalent amount. And Ridgway, of course, extended Wisner to Feglia, which contains the very same text at issue here. Now, for a number of reasons, we think that this case is even easier than Wisner and Ridgway. First of all, we're not dealing with a generally applicable body of law. We're dealing with something that is quite openly an attempt to do an end run on preemption. The only thing that triggers section D is being a former spouse and receiving the proceeds. The statute doesn't make any inquiry into intent, into whether there's been a tort or an independent contract. It simply reallocates the proceeds. It substitutes a new beneficiary. Roberts. If the ex-wife were in bankruptcy proceedings, this money would not necessarily go to her, right? It would go to the bankruptcy estate? It might, Your Honor. So why is the State law any different? Well, Congress With respect to divorces? Well, one reason, Your Honor, is 8705e. Congress has spoken specifically to the question of divorce in this context. And I think as Justice Scalia's and Justice Sotomayor's questions indicate, it didn't simply say that the existence of a decree or the fact of divorce would result in a change in who receives the proceeds. It said a very specific type of divorce decree would change the result. My problem with this case is, other than administrative convenience, I don't see what purpose Congress could have thought that this provision serves. Your Honor, there's certainly elements of administrative convenience in the statute. What else, what other objective do you think Congress was trying to achieve? It was trying to provide a benefit to Federal employees, and that benefit was to be able to provide benefits, life insurance proceeds, to the person of their choice. Why would it override the expressed will of an insured in, the expressed desire of an insured in, for example, a will that's executed after the time of the assignment, the designation of the beneficiary? In the case of a will, Your Honor, 8705a makes specific provision for the filing of a will with the employing officer OPM. And so Congress has taken account of wills, and it's rejected the idea of just a free-floating inquiry into intent. There were pre — I should add that the will language of 8705a was added to the statute in 1966. There had been some lower court cases that had sort of taken this approach to wills, contrary to the regulations that existed that said the designated beneficiary provision should govern. Congress rejected a free-floating inquiry into intent. Alito, but why? You've got a designation of a beneficiary in 1975, let's say, and then you have a will that's executed in 2005. Why would Congress want the designation of the beneficiary so far in the past to override the expression of the desire of the insured in the subsequent will? Congress wanted a simple rule, and it determined that the best evidence of intent is the actual naming of the beneficiary. Section D doesn't make it. Alito, how can that be the best designation of intent? You have a designation long in the past, and you have a will that says the insurance proceeds on leaving to a different person. How is the earlier designation of a beneficiary a better expression of intent? Well, I think you can debate what the better policy default is, but when you have a longstanding policy that says to Federal employees, this is what we take account of, and we give top billing, top priority to the naming of the beneficiary. Ginsburg. Mr. Johnson, that is in the OPM manual, but I think Mr. Rutenberg pointed out that it's 106-some-odd pages. How are employees covered by this insurance, how are they informed about what the beneficiary designation means? The simplest answer, Justice Ginsburg, is the form itself, form SF-2823. This form says keep your designation current, submit a new one if your intentions change, for example, due to a change in family status such as marriage, divorce, et cetera. So it's not simply the OPM handbook, it's the form itself, and this form is publicly available, of course, on OPM's website, but also was substantially the same and contained this language at the time of Warren Hillman's designation in this case. Breyer. I'm just curious, I thought it would have been an answer, Justice Alito, you were going to say. The answer is, it isn't more accurate. If we write a will and say I want these proceeds now to go to my second wife, that is a better expression of the person's intent, but if you open that door, you'll get other wills that aren't quite so clear, and that's the problem that Congress faced. That's exactly right, Your Honor, and of course, there's an issue. Is that right? Well, it is true that if you open the door, you'll have this problem. Congress wanted a clear, simple, and certain rule, and it spoke both to the issues of wills in 8705A and to the issue of divorce decrees in 8705B. Well, that provides a simple rule for the people who are affected by this dispute, and those are the people who are to stand to benefit, either under the designation of the beneficiary or under the will. But what why does Congress care about that? There are a lot of messy domestic relations issues out there in the States. That's what Congress was doing. It said, you know, these State domestic relations law leads to a lot of nasty and difficult disputes, you know, bleak house. Let's intervene and let's simplify this with a simple rule. You think that's what was involved here? I think that's part of what was involved. I think they wanted to ensure uniformity for Federal employees who might work in different jurisdictions or move around. I think, you know, you have a situation where wills are addressed in the statute, divorce decrees are addressed in the statute, and I would note that section D doesn't make any inquiry into intent. It's simply, it's just an automatic, blunt rule that the divorce itself has the effect of rerouting the proceeds. This Court's taken a very practical and realistic approach to issues of preemption in a wide variety of contexts. Just this term in the Woese case, we said, the Court said that it's not simply a matter of semantics. In Free v. Bland, one of this Court's precedents involving U.S. savings bonds, there was a dispute between the husband of the decedent who had an absolute right of survivorship under Federal laws governing the U.S. savings bond and a son who would have taken under a will. And the Texas Supreme Court, as the case came to it, said, we can simply honor title by saying, yes, the husband does have an absolute right of survivorship, but we'll order the husband to reimburse the estate. And this is what this Court said in reversing. Viewed realistically, the State has rendered the award of title meaningless. If the State can frustrate the party's attempt to use the bond's survivorship provisions through the simple expedient of requiring the survivor to reimburse the estate, the State has interfered directly with the legitimate exercise of the power of the Federal government. Breyer, if he's right, if the only consideration that led Congress to do that is to make this absolute rule and so forth, and the underlying, the previous holdings, if the only consideration were ease of administration by the Federal administrator, this statute wouldn't undermine it. So isn't that true? I mean, the Federal administrator writes the check to the person that's on the list. This is a matter after the check gets mailed, so this doesn't undermine it at all. There's no problem. If the question is whether it's possible to comply with the mandate to pay the name of the fishery. And if that were the only consideration, administration, this doesn't interfere with Federal administration. So in order to find something they have to interfere with, we have to figure that they're trying to protect an interest like the following. The person is married twice. He secretly wants to leave the insurance in the name of his first wife while pretending to the second wife it was just an oversight. I mean, that's what we have to make up in order to. Is there anything else? In many cases, Your Honor, the former spouse will have the care of children. There are lots of reasons why one might want to leave benefits to a former spouse. Maybe we should say, look, this is a statute that is absolute. There is no interest. All this does is run around, without being too pejorative, it runs around the earlier cases, which is your basic point. And it's absolute. And that would be a short route to affirmation, Your Honor. This Court has spoken to the nature of language like this. Segle is essentially identical. Wissner, in fact, predates the adoption of Segle. And so Congress had the benefit of that ruling when it was deciding to enact an order of precedence in this statute. The only real difference between the order of precedence here and the order of precedence in Wissner is that the range of choice is even broader. Wissner --" Kagan But I guess the question, Mr. Johnson, is whether we just got it wrong there. Because if you look at this statute, it seems, you know, if you were just doing it as a matter of first impression, that what Congress wanted was a clear and uniform rule to allow it to pay benefits quickly and easily without any discussion or investigation of a person's true intent, but that after that, why would Congress have an interest any further? And if a State has a law that says, really, we think the better measure of intent is something else, then we should let the State go ahead with their law. Johnson It's conceivable, Your Honor, but at a minimum, I think, this Court has said repeatedly that when this Court's ruled on the meaning of language and a similar language is adopted in a new statute, it's given the judicial interpretation unless Congress says otherwise. Scalia I guess you might respond also that, you know, it's characterized by your friend as a State law having to do with marriage and so forth. Maybe, but maybe it's just a State law having to do with discernment of intent. And here you have a Federal statute, and I guess the Federal Congress's assertion of what's the best discernment of intent in the natural order of things ought to prevail over the State's assessment of what's the clearest expression of intent, right? I don't know why it's a family law provision as much as it is a provision of what the presumed intent of a decedent is. And here the Federal Government has spoken to it. With respect to a Federal statute, and I don't know why it is intruding upon State family law for the Federal Government to assert in its own right intent under this statute is determined this way.  Either way, it's preempted, Your Honor, if that is the purpose behind it, Congress has a very different means of determining intent. And as the Court's repeatedly said, where you have conflicting means, you have preemption. But Section D doesn't call for any inquiry into intent. It makes an assumption about intent, and then based on that assumption, the rule is automatic. So whether it's a statute about intent, it's preempted because Congress says the best evidence of intent is what you do on the beneficiary form, or whether it's about divorce, it's preempted because Congress has spoken to when divorce will affect the enjoyment of proceeds by the beneficiary. Ginsburg. Mr. Johnson, there are at least one case where the State law would override the beneficiary designation, and that's obviously that the beneficiary murdered the insured. So how does this scheme to displace the beneficiary designated in the policy in the Slayer case requires State law? Is that? Your Honor, I believe I do agree with the premise of your question, which is that the Slayer would not be paid. The path to that is, I think, as follows. I think if the Slayer statute looks like a typical Slayer statute, then it's going to speak to, it's going to relate to life insurance, and the express preemption provision would probably kick in, and it would call for a different result, it would be preempted. But there's a longstanding Federal common law rule, and the lower courts addressing this situation have also held, that that informs the Federal statute here. The leading case from this Court is an 1886 decision, National Mutual Life Insurance v. Armstrong. And it is such a well-established rule that I think Congress can be viewed as having incorporated that rule into the statute by not having specifically overridden it. Ginsburg. So you would get there by a Federal common law rule, but then who would get the proceeds? If the designated beneficiary is out because of the Federal common law that excludes the Slayer, where would we go next? You would go to State law, right? No, it would go to the order of precedence. So the next one is, it would be, it would be, it would be the widow, or then the children and so forth in that scenario. If I may speak to Petitioner's argument about the Rose v. Rose case, I think that that case is really doubly inapposite. First of all, as this Court acknowledged in Rose, the statute there was designed to benefit dependents as well as the veteran. And it distinguished Wissner and Ridgway as cases involving a situation where Congress wanted to give an absolute right to the insured to ensure that they would enjoy the benefits. Second of all, at the State law level, again, there's no guarantee that the operation of Section D will result in the proceeds going to one's family. It could end up going to a perfect stranger under the next of kin provision. And in many cases, of course, the former spouse would be the one caring for children. So it's really, I think, doubly inapposite. Kennedy. In the Wissner case, there was a community property State. Do you know, under the statute we're dealing with here, is community property in those States also preempted so that the insured is the sole owner of the policy? I think that would be right, Your Honor. I mean, that is the holding of Wissner. Because there was a specific provision on that point in Wissner, and I, or the Court so read it, and I take it the same provision applies, exists in this statute? Yes. The Wissner court said that the order of precedence there was the controlling provision of the Act. And it said the same thing again in Wissner concerning Seglia's order of precedence, and it said it displaces inconsistent State law. Wissner, of course, in that case it was community property law. In Ridgeway, it was State constructive trust law. I would like to speak to the anti-attachment provision. As Justice Ginsburg noted, that was an alternative holding of the Court in these earlier cases. The Court referred to the order of precedence provision as controlling. Rose v. Rose itself acknowledged that the anti-attachment provision was an alternative holding of the Court, and we think that that is sufficient to resolve the order of precedence provision is sufficient to resolve this issue. Certainly Congress, looking at the Court's opinion in 1954 when it enacted Seglia, would have been likely to conclude that. In summary, Your Honors, this case is not a difficult case for refining a preemption under this Court's precedence. It's really a much easier case. It's not dealing with generally applicable law. It's governed squarely by precedent. And the statute at issue here, section D, is effectively an attempt to do an end run on the will of Congress. If there are no further questions, I'll defer to Ms. Goldenberg. Roberts. Thank you, counsel. Ms. Goldenberg. Mr. Chief Justice, and may it please the Court. Section D seeks to substitute a new beneficiary in place of the one that Federal law mandates, and it does that through an attempted end run around Federal preemption. I'd like to start off by talking about the purpose of the Federal law, which several of the Court's prior questions spoke to. The purpose here is to get benefits to the designated beneficiary for that person's beneficial enjoyment. That's the purpose that the Court found in very similar language in Ridgway and Wissner. And that serves as a way to get benefits to the designated beneficiary. Roberts. How far does that go? Obviously, the benefit becomes the property of the named beneficiary, but it's not like, to her enjoyment, she may want to spend it on something, but it's going to be going to have to go through bankruptcy, it's going to have to go through other claims like any other property under State law. That's true, Your Honor, but the designated beneficiary is benefiting, in a sense, when that money is used to pay that person's obligation. So we don't deny that because there's no anti-attachment provision here. The designated beneficiary could be subject to a contract judgment, a tort judgment, could have to pay other outstanding obligations that that person has. But that is extremely different than a law like the one we have here that says, in effect, to the designated beneficiary, you know what, we don't really think you're entitled to this money, we don't really think you deserve it, we don't think you have, in effect, equitable title to it, we think that belongs to somebody else, and so we're just going to transfer the proceeds to that other person. That's an extremely different situation. Alitoso, why would Congress want to make sure that the money goes to the designated beneficiary, where there is a very clear expression of intent on the part of the insured that the money goes someplace else? Well, I think there are a number of purposes served by that, and that speaks to the will question that Your Honor asked earlier. For one thing, it creates certainty in the process, not only for the insured, but for the beneficiary who's not going to have to face some kind of long legal contest over the money that may eat up the proceeds and attorneys' fees and cost. And that was a purpose that Congress specifically articulated when it made the 1966 amendment to the statute. It also those arguments seem to be circular. You're saying that the reason for making sure that the designated beneficiary gets the money instead of the person whom the insured has subsequently, and very clearly, is to make sure that the designated beneficiary gets the money and gets it without any hassle. Well, it creates a clear and uniform set of rules that everyone can abide by. And also, I think, in the case of a will, it protects the insured from fraud. That was another purpose that Congress gave in 1966. They don't want a situation where someone is going to find a will after the fact and say, look, this shows what this person really thought. The designated beneficiary form is the expression of the person's intent, and that's a very clear network of rules set up by the Federal Government that tells insureds what they must do if they want to change their beneficiary designation and tells them that their beneficiary designation is going to be. Kennedy, your concern is there might be fraudulent wills? It's possible that if you are looking outside the designated, the beneficiary designation form, that you may have people trying to come up with some other expressions of intent. It could be a will, it could be a letter, it could be other things. Well, it seems to me that's grasping at straws. Well, Your Honor, that's, as I say, one of the purposes that Congress gave when it passed that amendment in 1966 that said you don't conduct this free-floating inquiry into the insured's intent. You don't ask what would the insured have said if someone had asked them in the last moment of their life what they had what they want. You look at the designated beneficiary, you look at the beneficiary designation form, and as I was saying, in part that's because it's so easy to change. It's a one-page form. It's very simple. And insureds are told over and over again you have to keep your beneficiary designation up to date. When are they told over and over again? Well, there's You get the form when they sign up for the life insurance. So they periodically get notices from OPM saying, now, remember, you've designated so-and-so as your beneficiary. You know, annually, like in the open season, you really want to keep this person as your beneficiary? OPM actually does instruct agencies to periodically remind employees that they must keep their beneficiary designations up to date. Obviously, there's no way to know exactly what Mr. Hillman was told here. Nobody has told me that for many years. I hope it's clear at this point. Well, but I mean, we do get these cases over and over again. I mean, it is the sort of thing that it may be very easy to do, but it is the sort of thing that people often overlook. That may be, but nevertheless, Federal law sets up the rules and expects people to abide by them, and what you can't have is the opposite rule, because that just creates tremendous confusion. And I think the conflict here is very starkly illustrated when you think about what somebody who designated their spouse and got divorced and then wanted to keep that person as their beneficiary would hear from the Federal government if they went and said, what should I do? I really want my ex-spouse to keep being the beneficiary. What ought I to do? And if they were to consult the FEDOIA handbook, if they were to ask OPM, they would be told, do nothing, that beneficiary designation is valid, it's going to remain valid until you change it yourself. Now, that person's intent would be overridden by Section D, which would essentially pluck the benefits right out of the hand of the ex-spouse that that person meant them to go to and transfer them over to somebody else. And that makes essentially the focus of the Federal law on the designated beneficiary meaningless. It makes the award of the proceeds to that person a meaningless gesture. That's the language that this Court used in Free v. Bland, which was a case about ownership of Federal bonds. And that can't be what Congress intended. And you can't have these two different default rules operating together and have a system that works. Sotomayor, do you think that situation comes up a lot where an insured wants to make sure that a former spouse gets more money than the spouse is entitled to under the divorce decree? I certainly think it's possible, Your Honor. I think every person is different, every divorce is different. No, everything is possible. You think that's a common situation? That's what Congress was concerned about? I don't know if I can speak to how common it is, but as we said in our brief, there may be many reasons why somebody would want to give their ex-spouse the insurance proceeds. And I think what Congress was concerned with was effectuating the intent of the insured as expressed in their designated – in their designation form, so that there would be a clear system, a uniform system, and again, so that the beneficiary would be protected against actions much like this one that create all this confusion over who's actually entitled to the proceeds and may eat them up in legal fees. In addition, I point out that if Petitioner is correct, then you could have other State laws that are like this one that try to rewrite the order of precedence, and essentially the Federal order of precedence could be completely undone by State law. You'd also have a situation in which Federal employees attempting to figure out where their benefits are really going to go would have to make themselves familiar with State law. As Justice Ginsburg pointed out earlier, there may be serious choice of law problems there. The vast majority of these employees are not attorneys, and this is a tremendous burden to place on them. It's much simpler and clearer to have the system that we have under Federal law, and that's why that system was set up. If there are no further questions. Roberts. Roberts. Thank you, counsel. Mr. Ruttenberg, you have three minutes remaining. Ruttenberg. Thank you, Your Honor. First, a quick point about the Feigle handbook. The Feigle handbook came out in July 2008. Warren Hillman died in July 2008. So what the Feigle handbook said, I don't know that it applies in this case, but even if it did, what it says is a recitation of the Egglehoff holding. All it says is a divorce does not invalidate a designation that names your former spouse as a beneficiary. It says nothing about domestic relations laws not applying after that. And that's exactly what this Court held in Egglehoff. Another point that my friend made was with regard to serviceman's group life insurance and the holding in Ridgeway was based on the fact that the insurance proceeds belong to the designated beneficiary to the exclusion of all others. That was one of the main purposes this Court depended upon in ruling that the State law was preempted. And you can't say that in this case because those proceeds can belong to. There's express enactments which allow you to assign it and allow a Federal divorce decree to direct where those go. So it can't be said with Feigle that those proceeds belong to the designated beneficiary to the exclusion of all others. And the example that Mr. Chief Justice gave with regard to bankruptcy, the — in the case of a bankruptcy, that's not benefiting the designated beneficiary because all their debts are being discharged anyways. So in that situation, it's solely benefiting the creditors. I also wanted to address one of Justice Scalia's comments. Justice Scalia was suggesting that this is not a divorce law and is not subject to the preemption. But the preemption analysis with regards — I think two reasons he suggested that. One was it's a Federal act. And they applied in Ridgeway, which was dealing with the Federal act, the serviceman's group life insurance. They did apply the preemption analysis there. It was overcome, but they applied it. And this Court's case in Egelhoff also recognized that the statute, very similar Section A, the Washington version of Section A, was a divorce-slash-probate type of law, both of which are historical police powers. The only other comment I would like to make is with regard to the Slayer statutes. Many State Slayer statutes are drafted with the identical language of Section D, which says if preempted, then there can be a State law cause of action. They're based on the same uniform code and they use the same language. And if there are no other questions, I just would like to say what an honor it's been today and cede the rest of my time. Roberts. Thank you, counsel. The case is submitted.